UNITED STATES of America, by Ramsey CLARK, Attorney General

v.

KNIPPERS AND DAY REAL ESTATE, INC.; Town and Country Homes, Inc.; K & D Enterprises, Inc.; Myer-Yarbrough Realty, Inc.; Myer Development Corporation; Gully Agency, Inc.; I. W. Knippers; William E. Day, Jr.; C. Stevens Myer; Durward Gully; Kenneth C. Owens.

Civ. A. No. 68-123.

United States District Court E. D. Louisiana, Baton Rouge Division.

April 24, 1969.

Ramsey Clark, Atty. Gen., Stephen J. Pollak, Asst. Atty. Gen., Dept. of Justice, Washington, D. C., Louis C. LaCour, U. S. Atty., Eastern Dist. of La., Hugh W. Fleischer, Trial Atty., Dept. of Justice, New Orleans, La., for plaintiff.

Bobby L. Forrest, Forrest, Kiefer & Hubbs, Baton Rouge, La., for I. W. Knippers, William E. Day, Jr., individually and as officers of and herein representing Town & Country Homes, Inc., K & D Enterprises, Inc., and Knippers and Day Real Estate, Inc.

John V. Parker and Ben R. Downing, Jr., Sanders, Miller, Downing & Kean, Baton Rouge, La., for Durward Gully, Kenneth C. Owens, and Gully Agency, Inc.

Chapman L. Sanford and Roy F. Cangelosi, Jr., Kizer, Heaton & Cangelosi, Baton Rouge, La., for Myer-Yarbrough Realty, Inc., Myer Development Corp., and C. Stevens Myer.

WEST, Chief Judge:

This is a suit brought by the Attorney General of the United States seeking to enjoin certain real estate firms and the individual members thereof from engaging in an alleged pattern or practice of resistance to the full enjoyment of rights granted by Title VIII of the Civil Rights Act of 1968 (82 Stat. 81), Public Law 90-284, 42 U.S.C.A. § 3601 et seq., popularly known as the Fair Housing or Open Housing Act of 1968. The Attorney General alleges that the named defendants have engaged in a pattern or practice of racial discrimination in connection with the sale of houses in subdivisions under their control, and that

they have (1) refused to sell dwellings to Negroes, (2) represented to Negroes that dwellings were not available for sale when in fact they were, (3) discriminated against Negroes with respect to terms or conditions of sale of dwellings, and (4) made dwellings available to white persons on terms and conditions not made available to Negroes with comparable financial qualifications.

All defendants filed numerous motions, including motions for severance of claims against the various defendants, motions for more definite statements, motions for protective orders, motions to dismiss for misjoinder of parties defendant, motions to dismiss for failure to state a claim upon which relief can be granted, and motions for summary judgment. After hearing arguments of counsel on these various motions, and after carefully studying the many briefs and supporting affidavits filed, the Court concludes that the motions for summary judgment filed by each defendant must be granted, thus obviating the need to consider the other pending motions.

While the allegations contained in the plaintiff's complaint appear to be quite formidable, nevertheless, in actuality, the real question involved in this case is quite simply stated. In order to pass upon the motions for summary judgment, it is only necessary to pass upon the question of whether or not the particular dwellings in question were such dwellings as were intended by Congress to be covered by the provisions of Section 803 of Title VIII of the Civil Rights Act of 1968, 42 U.S.C.A. § 3603, on the dates involved in this litigation. The answer to this question must be in the negative. Title 42 U.S.C.A. § 3603 reads in part as follows:

"§ 3603. Effective dates of certain prohibitions—Application to certain described dwellings

"(a) Subject to the provisions of subsection (b) of this section and section 3607 of this title, the prohibitions against discrimination in the sale or rental of housing set forth in section 3604 of this title shall apply:

"(1) Upon enactment of this subchapter, to—

"(A) dwellings owned or operated by the Federal Government;

"(B) dwellings provided in whole or in part with the aid of loans, advances, grants, or contributions made by the Federal Government, under agreements entered into after November 20, 1962, unless payment due thereon has been made in full prior to April 11, 1968;

"(C) dwellings provided in whole or in part by loans insured, guaranteed, or otherwise secured by the credit of the Federal Government, under agreements entered into after November 20, 1962, unless payment thereon has been made in full prior to the date of enactment of this title: *Provided*, That nothing contained in subparagraphs (B) and (C) of this subsection shall be applicable to dwellings solely by virtue of the fact that they are subject to mortgages held by an FDIC or FSLIC institution; and

"(D) dwellings provided by the development or the redevelopment of real property purchased, rented, or otherwise obtained from a State or local public agency receiving Federal financial assistance for slum clearance or urban renewal with respect to such real property under loan or grant contracts entered into after November 20, 1962.

"(2) After December 31, 1968, to all dwellings covered by paragraph (1) and to all other dwellings except as exempted by subsection (b) of this section."

There is no dispute about the fact that all of the acts of discrimination herein complained of are alleged to have occurred prior to December 31, 1968.

The three subdivisions involved are (1) Sherwood Forest Place, allegedly owned and/or operated by defendants, I. W. Knippers, William E. Day, Jr.,

Knippers and Day Real Estate, Inc., Town and Country Homes, Inc., and K & D Enterprises, Inc.; (2) Drusilla Place, allegedly owned and/or operated by defendants, C. Stevens Myer, Myer Development Corporation, and Myer-Yarbrough Realty, Inc.; and (3) Jefferson Terrace, allegedly owned and/or operated by Durwood Gully, Kenneth C. Owens, and Gully Agency, Inc. Pretermitting the question of whether or not some of these defendants are improperly joined in this suit, we will proceed to a consideration of the motions for summary judgment based upon the contention of all defendants that the properties involved were not, at the times pertinent hereto, covered by the Fair Housing Act.

All of the alleged acts of discrimination, which plaintiff contends constituted a "pattern or practice," arise out of the attempt by one, and only one, particular Negro to purchase a house. It is alleged by plaintiff that Mr. Paul J. Brown, a member of the Negro race, contacted the owners, or representatives of the owners, of each of the three subdivisions involved in an effort to purchase a house, but was unsuccessful in doing so. He later did purchase a very fine home in another fashionable subdivision which was previously all white. He moved into that house without incident and presently resides therein.

The defendants all deny vehemently that a good faith offer to purchase their houses was ever made by Mr. Brown, and they further deny that they ever refused to negotiate for the sale of their houses or that they in any way discriminated unlawfully against Mr. Brown. But for the purpose of this opinion only we will assume that the defendants did refuse to sell their houses to Mr. Brown because of his race. The question to be decided is whether or not, under the circumstances of this particular case, such discrimination, if found to have been practiced by the defendants, constituted a violation of the provisions of Title 42 U.S.C.A. § 3603, hereinabove quoted.

The evidence shows that each of the three subdivisions involved had been approved by the Federal Housing Administration and the Veterans Administration for possible F.H.A. and V.A. financing of houses built or to be built therein. In other words, the F.H.A. and V.A. had issued "site approvals" covering the subdivision land itself. In addition to this, the evidence indicates that there were, in fact, certain dwellings located in each of these subdivisions which had been sold with the aid of F.H.A. or V.A. financing, but no federal funds whatsoever had ever been sought or used by the developers of the three subdivisions, either in connection with the land development or in connection with the building of any dwellings therein. In other words, none of the defendants either borrowed money from the Federal Government nor owed the Federal Government any money whatsoever, nor owed any money whatsoever on any loan guaranteed or insured in any way by the Federal Government in connection with the development of the subdivisions or of the building of any of the houses located therein. And more particularly, the specific dwellings involved herein, i. e., the houses that plaintiff contends Mr. Brown attempted to purchase, had no outstanding F.H.A., V.A., or other Government loan or Government guaranteed loan against them, nor had any such loan ever been outstanding against those dwellings or the land upon which they were built. This fact is not contested by the Government, nor could it be. The only fact upon which the Government could possibly, in good faith, rely to support its position is the fact that the subdivisions themselves, while not in any way involving federal funds in their development, had been approved and possibly surveyed by the F.H.A. and/or V.A. and certified as eligible for federally guaranteed loans *if* the specific house on which a loan should ultimately be requested was built to the required specifications, and *if* the purchaser should choose to apply for such a loan, and *if* the purchaser met all of the credit and other qualifications required

by the F.H.A. and/or V.A. and *if* his application for a loan was actually approved. None of these conditions, with the possible exception of the houses in question having been built to F.H.A. and/or V.A. specifications, were met in this case, and indeed no attempt had ever been made by anyone to involve federal funds in the construction or sale of the specific houses here involved. The Government concedes this but contends that the mere approval of the subdivision by the Federal Housing Administration alone constitutes a "contribution" as contemplated by 42 U.S.C.A. § 3603(a) (1) (B), and that thus, this "involvement" of the Government makes the Act applicable to all dwellings located therein regardless of whether or not the particular dwelling in question is encumbered with a loan involving federal funds or a federally guaranteed loan. After considering the Act in its entirety, this Court concludes that such a contention is untenable. The pertinent provisions of the Act must be read in their entirety, and when this is done, it is clear that no such interpretation as that argued for by the Government was ever intended by Congress.

Section 803(a) (1) (B) of the Act, 42 U.S.C.A. § 3603(a) (1) (B), provides for the first step in the implementation of the Fair Housing Act. It says that the prohibitions against discrimination in the sale or rental of housing shall apply to:

"(B) dwellings provided in whole or in part with the aid of loans, advances, grants, or contributions made by the Federal Government, under agreements entered into after November 20, 1962, unless payment due thereon has been made in full prior to April 11, 1968;"

and Section 803(a) (1) (C), 42 U.S.C.A. § 3603(a) (1) (C), makes such discrimination apply to:

"(C) dwellings provided in whole or in part by loans insured, guaranteed, or otherwise secured by the credit of the Federal Govern-

ment, under agreements entered into after November 20, 1962, unless payment thereon has been made in full prior to the date of enactment of this title: * * *."

Then, the next step in the implementation of the Act is contained in Section 803(a) (2), 42 U.S.C.A. § 3603(a) (2), wherein it is provided that the Act will be applicable:

"(2) After December 31, 1968, to all dwellings covered by paragraph (1) and to all other dwellings except as exempted by subsection (b) of this section."

The subsection (b) referred to, 42 U.S. C.A. § 3603(b), exempts from the Act certain single family houses sold or rented by the owner where the owner does not own more than three such single family houses at any one time. And finally, the final step in the full implementation of the Act is provided for by that same subsection when it provides:

"That after December 31, 1969, the sale or rental of any such single-family house shall be excepted from the application of this subchapter only if such house is sold or rented (A) without the use in any manner of the sales or rental facilities or the sales or rental services of any real estate broker, agent, or salesman, or of such facilities or services of any person in the business of selling or renting dwellings, or of any employee or agent of any such broker, agent, salesman, or person and (B) without the publication, posting or mailing, after notice, of any advertisement or written notice in violation of section 3604(c) of this title; but nothing in this proviso shall prohibit the use of attorneys, escrow agents, abstractors, title companies, and other such professional assistance as necessary to perfect or transfer the title, or

"(2) rooms or units in dwellings containing living quarters occupied or intended to be occupied by no more than four families living independently of each other, if the owner actually main-

tains and occupies one of such living quarters as his residence." 42 U.S. C.A. § 3603(b) (1), (2).

Since it is obvious that Congress intended that this Act be implemented in certain clearly defined steps rather than in one fell swoop, and since all of the parties to this suit agree that the acts herein complained of occurred prior to December 31, 1968, our inquiry is necessarily limited to the question of whether or not the defendants have failed to take the first step required of them toward the implementation of the Act. And since the Government concedes that there was not, at any time, any loan, advance, or grant made by the Federal Government in connection with the providing of the dwellings involved, and since the Government further concedes that neither the dwellings involved nor the subdivision land upon which they were built was provided in whole or in part by any loans insured, guaranteed or otherwise secured by the credit of the Federal Government, our inquiry is further limited to the narrow question of whether or not the "involvement," if any, of the Federal Government in the "dwellings" involved constituted a "contribution" under the Act such as to make the Act applicable to these dwellings. In other words, did the mere approval, tentative as it was, or the possible survey of the property by the F.H.A. or V.A., or the possible issuance of a certificate of reasonable value by the F.H.A. or V.A. amount to a "contribution" as contemplated by the Act. The answer is an obvious and emphatic NO. The Act provides, as quoted above, that even a Government loan, advance, grant or contribution would not have subjected these dwellings to the provisions of the Act prior to December 31, 1968 if such loan, advance, grant, or contribution had been paid off in full prior to the date of the enactment of the Act. Thus the Act clearly contemplates the type of loan, advance, grant or contribution that is susceptible of repayment. Even the Government conceded in this case that the type of "contribution" which it says the

Government made, i. e., issuance of certificates of reasonable value, surveys, and/or site approvals, were not a type of "contribution" that was susceptible of repayment. And indeed it must so agree because there was no repayable charge made by the Government for such survey or approval. But the Government argues that somehow this Government "involvement" makes the property subject to the Act. They argue that the "payment due" referred to in the Act is directed only at "loans, advances," and "grants" and not to "contributions" made by the Federal Government. There is, of course, no justification for performing such surgery on the Act. To cut out the word "contributions" and treat it differently from the words "loans, advances" and "grants" would be entirely unjustified. The Act says very simply that it applies to "dwellings provided in whole or in part with the aid of loans, advances, grants, or contributions made by the Federal Government, under agreements entered into after November 20, 1962, unless payment due thereon has been made in full prior to April 11, 1968."

This is a very simple provision. It requires no strained meanings placed upon the words used therein to carry out its obvious intent. If Congress had intended "contributions" to be treated differently from loans, advances and grants, it could easily have said so. It chose to treat loans, advances, grants, and contributions alike, and it chose to provide that even if the dwelling involved was provided in whole or in part with the aid of a loan, advance, grant, or contribution by the Federal Government, but if there was no unpaid balance on such loan, advance, grant or contribution at the time of the enactment of the Act, the Act would simply not apply. Such was the case here. At the time the Act was passed, and at the time of the incidents complained of, and indeed at all times up to and including the time of hearing before this Court, there was never any unpaid balance on any loan, advance, grant, or contribution made by the Fed-

eral Government in connection with the providing of the dwellings herein involved or in connection with the subdivision property on which they were built. Thus there was simply no "involvement" by the Federal Government in the particular properties involved in this suit which would, prior to December 31, 1968, make those properties subject to the provisions of Title VIII of the Civil Rights Act of 1968, 42 U.S.C.A. § 3601 et seq.

Since there is admittedly no contested issue of fact involved in this aspect of the case, and since, as a matter of law, the dwellings herein involved were not subject to the provisions of the Fair Housing Act at the time of the alleged acts of discrimination, the motion for Summary Judgment filed by each of the defendants will be granted and this case will accordingly be dismissed.